## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Harriet M. Liedtke, | Case No. 15-cv-3361 (JRT/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ria Runningen, Timberland Partners, City of Burnsville, Matthew Smith, Fairview Health Services, Dakota County, Angela Elwell, and Joe Dalager, | |
| Defendants. | |

Harriet M. Liedtke, 15151 Green Haven Drive, Apt. 124, Burnsville, MN 55306, pro se

Barry G. Vermeer and Jennifer M. Waterworth, Gislason & Hunter, 701 Xenia Avenue South, Suite 500, Minneapolis, MN 55416, for Fairview Health Services

Christine E. Hinrichs and Kelly A. Putney, Bassford Remele, PA, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for Joe Dalager

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant Fairview Health Services' Motion to Dismiss [Doc. No. 192] and Defendant Joe Dalager's Motion to Dismiss [Doc. No. 193]. These motions were referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a) [Doc. No. 207]. The Court took the motions under advisement on March 9, 2016, and indicated it would issue a

report and recommendation on the papers.  For the reasons set forth below, the Court

recommends granting the motions to dismiss.

## I.      BACKGROUND

Plaintiff Harriet Liedtke, acting pro se, initiated this action by filing a complaint

on August 25, 2015, raising numerous claims under both federal and state law.  (Compl.

[Doc. No. 1].)  In her Amended Complaint, filed September 18, 2015, Plaintiff describes

claims arising from disputes with her neighbor and landlord, incidents involving the

Burnsville Police Department, and legal and medical malpractice claims based on a series

of civil commitment proceedings in Dakota County (Am. Compl. [Doc. No. 14].)[1]

Plaintiff demands both equitable and monetary relief.

Fairview Health Services (Fairview) answered the Amended Complaint on

November 10, 2015 [Doc. No. 118].  Dalager answered on October 22, 2015 [Doc.

No. 50].  Several of the other defendants, specifically Dakota County and Angela Elwell

(collectively the Dakota County Defendants), the City of Burnsville and Matthew Smith

(collectively the Burnsville Defendants), and Timberland Partners, moved to dismiss the

claims against them on a variety of grounds [Doc. Nos. 52, 81, 90].  The Court addressed

those motions in a Report and Recommendation dated June 20, 2016 [Doc. No. 216].

Fairview filed a Motion to Dismiss the claims against it on February 1, 2016 [Doc.

No. 192], and Dalager filed a Motion to Dismiss the same day [Doc. No. 193].  It is those

motions that are the subject of this Report and Recommendation.

---

[1]  Plaintiff numbered her paragraphs, but restarted numbering for each Defendant.  For
clarity, the Court cites to both page and paragraph numbers in the Amended Complaint.

## A.       Factual Allegations

Plaintiff's Amended Complaint totals sixty-nine pages and is difficult to decipher, but the relevant allegations appear to be as follows.  Even though some allegations relate to Plaintiff's claims against other defendants, and are more fully described in the Court's June 20, 2016, Report and Recommendation on other pending motions to dismiss [Doc. No. 216], the Court recounts them here for completeness.  Plaintiff rented an apartment from Timberland Partners in Dakota County, Minnesota.  (Am. Compl. at p. 2 ¶¶ 3, 5.)  Plaintiff had several noise and other disturbance disputes with her neighbor, Runningen, whom Plaintiff accuses of running an illegal manufacturing business in her apartment.[2]  (*Id.* at pp. 3-8 ¶¶ 1-23.)  The Amended Complaint contains a number of allegations involving Runningen, but of greatest moment to the motions currently before the Court, Plaintiff alleges Runningen had been hammering in her upstairs apartment for two days, making shelving units.  (*Id.* at p. 4 ¶ 13.)  On August 29, 2013, at about 5:35 p.m., in response to Runningen's hammering, Plaintiff sat in a folding chair and began "hammering rhythmically" on Runningen's door.  (*Id.* at p. 4 ¶ 13; p. 10 ¶¶ 8-9.)  When Runningen opened the door and saw Plaintiff, she immediately closed her door.  (*Id.*)  Plaintiff told Runningen, "I owe you two more days of hammering."  (*Id.*)  The Amended Complaint goes on to allege that Plaintiff continued rhythmically hammering on Runningen's door until approximately 5:45 p.m.  (*Id.* at p. 10 ¶¶ 8-10.)  Runningen called 911 and reported that when Runningen answered her door, Plaintiff was standing there

---

[2]  The Amended Complaint also seeks relief against Runningen.  While Runningen has not filed a motion to dismiss, the Court also recommends dismissal of claims against her for lack of subject matter jurisdiction below in Section II.D.

with a raised hammer aimed at her head and swung the hammer, hitting the door to one

side of Runningen's head.  (*Id.* at p. 5 ¶ 15.)  Runningen reported Plaintiff had "mental

problems" and she feared Plaintiff was going to hit her with the hammer.  (*Id.*)

Burnsville City Police Sergeant Smith (a named defendant) and Officer Hasselman

responded to Runningen's 911 call.  (*Id.* at p. 33 ¶ 4; p. 36 ¶ 18.)  The Amended

Complaint acknowledges Plaintiff had been hammering on Runningen's door, but alleges

Smith and Hasselman "should not have believed Runningen about being threatened with

a hammer."  (*Id.* at p. 35 ¶ 9.)  Smith and Hasselman confronted Plaintiff, who by then

had apparently returned to her own apartment.  (*Id.* at pp. 36-37 ¶ 18.)  Plaintiff alleges

the two acted in a hostile and disrespectful nature towards her by calling her by her first

name and refusing to accept her offers of earplugs, bug spray, and coats, which she

described as "collateral," that showed her willingness to speak with them.  (*Id.* at pp. 37-

38 ¶¶ 21-23.)  Plaintiff further alleges that Smith rammed her against a wall in her

apartment (*id.* at p. 38 ¶ 24), misapplied handcuffs on her, retaliated by applying

quadruple handcuffs after she removed one of her hands from the handcuffs, and

repeatedly readjusted the four-point restraints despite her screams of pain.  (*Id.* at p. 25

¶ 22; p. 40 ¶ 27.)  Smith subsequently completed an incident report and stated Plaintiff

was "agitated," although Plaintiff states she was not agitated "until after police attacked

her."  (*Id.* at p. 42 ¶ 33.)  He took Plaintiff into custody and transported her to Fairview

for an emergency medical hold under Minnesota Statute § 253B.05 on the ground of

mental instability.  (*Id.* at p. 25 ¶ 20; p. 42 ¶ 32.)

Dr. Dennis Philander examined Plaintiff at Fairview and diagnosed her on August 30, 2013, as suffering from delusional paranoia. (*Id.* at p. 45 ¶ 1; p. 47 ¶ 12; p. 50 ¶ 28.) Fairview institutionalized Plaintiff for delusions.[3] (Am. Compl. at p. 45 ¶ 3.)

The precise chronology of Plaintiff's subsequent commitment proceedings is not entirely laid out in Plaintiff's Amended Complaint, but court orders relating to those commitments were filed by the Dakota County Defendants and fill in some of the gaps.[4] The orders state Plaintiff was placed on emergency medical hold, and on September 4, 2013, Fairview filed a petition seeking to civilly commit her; that same day, Dakota County Judge David L. Knutson ordered her to be committed at Fairview pending a preliminary probable cause hearing. (Timmerman Suppl. Aff. Ex. 3 (Order, *In re Civ. Commitment of: Harriet M. Liedtke*, Case No. 19HA-PR-13-624 (Minn. Dist. Ct. Sept. 4, 2013)) [Doc. No. 129].) At a final hearing on September 12, 2013, Dakota County Judge Tim D. Wermager provisionally discharged her from commitment provided she satisfied certain court-ordered conditions. (Timmerman Suppl. Aff. Ex. 5 (Findings of Fact,

---

[3] Plaintiff alleges Dr. Philander and Dr. Susan Van Pelt are employees of Fairview, although Fairview disputes this. (*Id.* at p. 45 ¶ 1; Answer at p. 4 ¶ 4 [Doc. No. 118].) Plaintiff has attempted twice to add Drs. Philander and Van Pelt as named defendants. On November 23, 2015, she filed a "Notice of Joinder of Dennis Philander and Susan Van Pelt" [Doc. No. 125], and on November 30, 2015, she filed a Second Amended Complaint [Doc. No. 141], in which she named Drs. Philander and Van Pelt as defendants. However, on neither occasion did she file the requisite motion to amend her complaint to add new parties. The "Notice of Joinder" was of no effect, and the Court granted Defendants' motions to strike the Second Amended Complaint on January 7, 2016 [Doc. No. 190], leaving the Amended Complaint addressed in this Report and Recommendation as the operative pleading.

[4] The Court considers these materials both as matters of public record and as matters embraced by the Amended Complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).

Concls. of Law & Order, *In re Liedtke*, Case No. 19HA-PR-13-624 (Minn. Dist. Ct. Sept. 12, 2013)) [Doc. No. 129].)

Plaintiff's Amended Complaint goes on to state that Elwell, a Dakota County social services worker, reported that during a meeting with Plaintiff on September 24, 2013, Plaintiff told her she had stockpiled fertilizer and alarm clocks in her apartment to blow it up when she moves out and to shoot police from the laundry room window with an AK-47 when they show up to investigate. (Am. Compl. at pp. 60-61 ¶¶ 3-4.) On September 25, 2013, Plaintiff was again judicially committed by a judge from the Dakota County District Court. (*Id.* at p. 56 ¶ 11.) She was released sometime later, but then committed again on January 7, 2014. (*Id.* at p. 57 ¶ 14.)

Plaintiff alleges doctors at Fairview did not listen to her, and that what they characterized as her "delusion" that Runningen was operating an illegal business was in fact true. (*Id.* at p. 45 ¶ 3.) She further alleges the doctors did not listen to her complaints that police acted with hostility towards her and assaulted and battered her without reason (*id.* at p. 46 ¶¶ 5-7), and that they did not photographically document her physical trauma (*id.* at p. 47 ¶ 11). Plaintiff also contends that the doctors misdiagnosed her because they relied on unsubstantiated quotes from police reports. (*Id.* at p. 47 ¶ 10.) Plaintiff accuses Dr. Philander of inadequately examining her and incompetently diagnosing her with paranoia. (*Id.* at p. 47 ¶ 12.) She accuses Dr. Susan Van Pelt of seeing her physical trauma and hearing about the alleged police brutality, but offering her no pain relief or sympathy/empathy. (*Id.* at pp. 47-48 ¶¶ 14-18.) She also asserts that Drs. Van Pelt and Philander wrongfully disbelieved Plaintiff's account of events that led

6

to her institutionalization.  (*Id.* at pp. 48-49 ¶¶ 19-21, 24-26.)  Plaintiff further accuses

Dr. Van Pelt of drawing her blood and administering her drugs against her will.  (*Id.* at

p. 49 ¶¶ 22-23.)  She alleges that Dr. Philander was unethical in treating her at the same

time he was treating Ruhland, an alleged witness to the incidents at the apartment on

August 29, 2013.  (*Id.* at pp. 50-51 ¶¶ 34-36.)

Plaintiff claims she requested that Fairview remove Dr. Philander as her treating

physician, but it never did so.  (*Id.* at p. 50 ¶ 31.)  Further, Plaintiff accuses Fairview of

negligently exercising no control over its medical staff, who allegedly recorded

inaccurate information on her medical records, and that Fairview failed to discipline its

staff for mistakes.  (*Id.* at pp. 52-53 ¶¶ 45-46.)   Plaintiff also complains that Fairview

improperly limited her Internet access to fifteen minutes per day, depriving her of an

opportunity to prepare her legal defense in her commitment proceedings, and therefore

depriving her of a legal remedy and due process.  (*Id.* at p. 51 ¶ 37.)  Plaintiff further

generally claims that Fairview forced dangerous drugs on her, tortured her by

institutionalizing her, and failed to correct Dr. Philander's alleged misdiagnosis.  (*Id.*

at pp. 53-54 ¶ 47-51.)

Dalager was the attorney assigned to represent Plaintiff during her civil

commitment proceedings in Dakota County District Court.  (*Id.* at p. 65 ¶ 1.)  Plaintiff

brings a common-law legal malpractice claim against Dalager for his role as her court-

appointed attorney.  She alleges he provided inadequate assistance by failing to subpoena

any witnesses or documents, failing to listen to the three police audio recordings, and

failing to preserve the 911 audio recording of the phone call made by Runningen in

which she allegedly stated that Plaintiff tried to murder her.  (*Id.* at p. 65 ¶¶ 2-3.)

Plaintiff also states Dalager failed to communicate with her, returning only one of her

phone calls.  (*Id.* at p. 65 ¶ 4.)  She claims Dalager should have intervened to force

Fairview to remove Dr. Philander as her treating physician (*id.* at p. 66 ¶ 8), and failed to

arrange for an independent doctor to examine her, instead allowing court-appointed

doctors to testify without challenging their competence in court (*id.* at p. 65 ¶ 5).

Additionally, Plaintiff alleges Dalager inadequately represented her by not attempting to

remove the district court judge for alleged misconduct (*id.* at p. 67 ¶ 11), and by failing to

appeal any adverse court decision (*id.* at p. 66 ¶ 6).  In general, Plaintiff contends Dalager

performed a wholly inadequate investigation, as a result of which she was wrongfully

institutionalized multiple times.

### B.      Plaintiff's Claims and Relief Requested

While the specific legal grounds for Plaintiff's claims against Fairview and

Dalager are not always clear, her predominant claims arise under state law: a common-

law medical malpractice claim against Fairview, and a common-law legal malpractice

claim against Dalager.  She also alleges Fairview violated Minnesota Statutes § 609.505,

subd. 1, and § 253B.23, subd. 3, and asserts what appear to be claims of false

imprisonment, spoilage, and defamation.  (*Id.* at p. 54 ¶ 53.)

The Amended Complaint, even viewed liberally, identifies no federal claims

against Dalager, and does not appear to identify any federal claims against Fairview

except for a claim that Fairview "violated HIPAA 45 CFR 164.526" by failing to correct

alleged inaccuracies in her medical records.  Plaintiff argues this Court should

nevertheless exercise supplemental jurisdiction over her state law claims against Fairview and Dalager because she has made federal claims against other defendants that arise out of the same factual circumstances.

Plaintiff demands monetary damages, punitive damages, and costs and attorneys' fees.  (*Id.*)  She also seeks to have Fairview correct any medical records pertaining to her.  (*Id.*)  From both Fairview and Dalager, she seeks cooperation to set aside the civil commitment decisions against her.  (*Id.* at pp. 68-69.)

## II.   DISCUSSION

### A.   Procedural Considerations

In her response to these motions to dismiss, Plaintiff argues that Fairview's and Dalager's motions are not properly before the Court for several reasons.  Specifically, Plaintiff argues that (1) this Court ordered that there be no more submissions related to dismissal, (2) the issue of whether all state law claims should be dismissed for lack of subject matter jurisdiction is already before the Court for decision, (3) the moving Defendants have not yet been properly served and a motion for dismissal is thus inappropriate, and (4) both Fairview and Dalager already answered the Amended Complaint and a motion for dismissal is proper only prior to an answer.

On November 24, 2015, this Court ordered that no "further submission by any party on the pending motions will be permitted" [Doc. No. 131 at 2].  But that order referred only to the "pending motions," i.e., the motions to dismiss filed by the Dakota County Defendants, the Burnsville Defendants, and Timberland Partners, on which briefing was complete.  Nothing in that order prohibited Fairview or Dalager from

subsequently filing their own motions to dismiss. Next, while it is true the issue of

pendent jurisdiction over state court claims was already before the Court on those prior

filed motions (and, indeed, a court may raise and consider the issue of subject matter

jurisdiction at any time), that did not preclude Fairview and Dalager from raising the

issue in their own motions to dismiss. Regarding Plaintiff's argument that motions to

dismiss are not appropriate before Defendants have been properly served, the District

Judge upheld this Court's decision that the Defendants' effectively waived service [Doc.

No. 215 at 7]. Finally, motions to dismiss may be brought after an answer has been filed.

*See* Fed. R. Civ. P. 12(c), 12(h)(2)-(3). The Court therefore concludes the motions to

dismiss are properly before it and proceeds to the merits.

**B.    Fairview's Motion to Dismiss**

Fairview filed a motion to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) and 12(b)(6). Specifically, Fairview argues subject matter

jurisdiction is lacking, Plaintiff has failed to comply with the expert affidavit

requirements of Minnesota Statute § 145.682, Fairview is entitled to statutory immunity

for its role in Plaintiff's court-ordered civil commitment, Plaintiff has not pleaded a claim

against Fairview upon which relief may be granted, and the Court must dismiss claims

against Fairview under the doctrines of *Rooker-Feldman*, *Heck v. Humphrey*, and

collateral estoppel.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to

dismiss a complaint for lack of subject matter jurisdiction. A party contesting subject

matter jurisdiction may mount either a facial challenge or a factual challenge to a court's

jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990).

On a facial attack, the court limits its consideration to the allegations of the complaint.

*Id.* at 729 & n.6.  On a factual attack, the court may consider matters outside the

pleadings without converting the motion to one for summary judgment.  *Id.*  "[N]o

presumptive truthfulness attaches to the plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the

merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that

jurisdiction does in fact exist."  *Id.* at 730.  In determining whether the plaintiff has

sustained that burden, a court has the duty to construe liberally a pro se party's pleadings.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, "the Court may not supply

additional facts or fashion a legal theory that assumes facts that have not been pleaded."

*Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at

*2 (D. Minn. July 15, 2014) (citing *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir.

2004)).

     On a motion to dismiss brought pursuant to Rule 12(b)(6), "a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant."  *Wong v. Minn. Dep't. of Human Servs.*,

No. 13-cv-3378 (DWF/JSM), 2014 WL 4796464, at *3 (D. Minn. Sept. 26, 2014) (citing

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).  Generally, in considering a motion

to dismiss under Rule 12(b)(6), the Court considers only the facts alleged in the

complaint.  A court may make exceptions to this rule for "matters of public record,

orders, materials embraced by the complaint, and exhibits attached to the complaint."  *Id.*

at *3.  In deciding these motions to dismiss, the Court relies on matters of public record and other orders.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### 1.    Federal Claims

As already noted, even a liberal reading of the Amended Complaint identifies no federal claims against Fairview except for the alleged HIPAA violation.  That the Amended Complaint does not otherwise assert federal claims against either Fairview (or Dalager, for that matter) is further borne out by Plaintiff's "Motions Related to Section 1983/RICO Dismissal Motions" [Doc. No. 71], in which she describes the Burnsville Defendants and the Dakota County Defendants as the "Federal claims defendants."  (*Id.* at 5.)  She refers to "motions to dismiss the federal claims by the city/Smith/county/Elwell," and acknowledges that "this federal court wouldn't hold on to pendent state claims against the other defendants Runningen, Timberland Partners, Fairview Health Services, and Dalager were the federal claims to be dismissed."  (*Id.* at 2.)  While Plaintiff's memorandum in response to Fairview's motion [Doc. No. 208] speculates that Fairview "may be liable as a joint participant with the city and county, et al, in violating constitutional rights 'under color of law'" (*id.* at 8-9), she does not plead that in the Amended Complaint, let alone other facts that would suggest she intended to

make a claim against Fairview under either RICO or 42 U.S.C. § 1983.[5]  Indeed, a

plaintiff may not add factual allegations to her complaint in a memorandum in opposition

to a motion to dismiss.  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995

(8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in

opposition to a motion to dismiss. . . . To hold otherwise would mean that a party could

unilaterally amend a complaint at will." (citations omitted)).  And a pro se plaintiff's

complaint must still allege sufficient facts to support its claims.  *Stone*, 364 F.3d at 914

(noting that a court cannot fashion legal theories for pro se plaintiffs).  Accordingly, the

Court does not view Plaintiff's Amended Complaint in its current form as attempting to

plead a RICO or § 1983 claim against Fairview.

As to the asserted claim under HIPAA, Plaintiff acknowledges in her responsive

memorandum that there is no private cause of action for violations of HIPAA.  (Pl.'s

Mem. Opp'n Fairview's Mot. Dismiss at 4 [Doc. No. 208].)  *See Dodd v. Jones*, 623 F.3d

563, 569 (8th Cir. 2010).  She nevertheless maintains that HIPAA violations

"piggyback[] onto other causes of action," such as establishing a standard of care in

professional liability suits.  (Pl.'s Mem. Opp'n Fairview's Mot. Dismiss at 4.)  Insofar as

the Amended Complaint could be viewed as alleging a standalone HIPAA cause of

action, the Court recommends dismissal of this claim with prejudice.

---

[5]  The Court discussed some of the requisite elements of claims under RICO and
42 U.S.C. § 1983 in its Report and Recommendation on the Motions to Dismiss filed by
the Dakota County Defendants, Burnsville Defendants, and Timberland Partners [*see,
e.g.*, Doc. No. 216 at 16-20, 39], and will not repeat that discussion here.

### 2.     State Law Claims

Plaintiff brings a medical malpractice claim against Fairview, as well as claims that Fairview violated Minnesota criminal statutes and defamed her.

### a)     Lack of Subject Matter Jurisdiction

Plaintiff argues pendent jurisdiction under 28 U.S.C. § 1367 is another source of federal jurisdiction over state law claims in this case.  28 U.S.C. § 1367 gives federal courts supplemental jurisdiction in cases where district courts have original jurisdiction and other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  If a court dismisses all claims over which it has original jurisdiction, § 1367(c) gives courts discretion in determining whether to exercise supplemental jurisdiction.  "In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigators."  *Magee v. Trustees of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013), *aff'd*, 747 F.3d 532 (8th Cir. 2014).  In making that assessment, "courts look to a number of factors, including the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum."  *Id.* (quotation omitted).  "Courts should exercise judicial restraint and avoid state law issues wherever possible," especially "when federal claims are dismissed before trial."  *Id.* (citations omitted).

Here, the Court has recommended dismissal with prejudice of the only federal law claim asserted in the Amended Complaint against Fairview and Dalager.  In the Court's

previous Report and Recommendation, it recommended dismissal with prejudice of all

but one of the attempted federal claims against the Dakota County Defendants, the

Burnsville Defendants, and Timberland Partners [Doc. No. 216].[6] If this Report and

Recommendation is adopted, Plaintiff's only surviving claims against Fairview would be

her state law claims, of which the primary one is for medical malpractice. If the Court's

Report and Recommendation on the motions to dismiss of the other Defendants is

adopted, the only federal claim even potentially remaining (subject to Plaintiff's ability to

successfully amend her complaint and survive another likely motion to dismiss) would be

a claim against a police officer for alleged excessive force. Judicial efficiency would not

be served by retaining her state law claims against Fairview in this Court. Discovery has

not yet begun, and state court is an available and equally if not more convenient forum

for the resolution of the kinds of issues raised by Plaintiff against Fairview. Accordingly,

the Court recommends that the District Court decline to exercise supplemental

jurisdiction over Plaintiff's state law claims.

     If the District Court declines to exercise supplemental jurisdiction over Plaintiff's

state law claims, any decision about their sufficiency on the merits may be deferred to

the state court. In the event the District Court wishes to consider Fairview's additional

arguments for dismissal, however, the Court turns to those next.

---

[6] The Court concluded that Sergeant Smith, like the other individual defendants, had not been named in his individual capacity, and recommended that any claim that he used excessive force be dismissed without prejudice on that ground.

### b)   *Rooker-Feldman* **and** *Heck v. Humphrey*

Fairview also argues Plaintiff's claims against it should be dismissed for lack for

subject matter jurisdiction under *Rooker-Feldman* and failure to state a claim under

*Heck v. Humphrey*.  For a full explanation of these doctrines, the Court relies on its

earlier Report and Recommendation [Doc. No. 216].  Pertinent to this motion, *Rooker-*

*Feldman* bars claims seeking redress of an injury caused by a state court decision, but

generally not of claims that are independent or not "inextricably intertwined" with the

decision.  *See Peet v. Associated Bank, N.A. Mendota Heights*, No. 11-cv-2544

(SRN/JJG), 2012 WL 7589401, at *4 (D. Minn. July 20, 2012), *R. & R. adopted*,

2013 WL 717349 (D. Minn. Feb. 27, 2013), *aff'd*, 556 F. App'x 546 (8th Cir. 2014);

*Milliman v. Cty. of Stearns*, No. 05-cv-2993 (JRT/RLE), 2006 WL 2583170, at *12-13

(D. Minn. Sept. 7, 2006); *see also Montin v. Moore*, No. 4:14CV3142, 2015 WL

10945544, at *2 (D. Neb. June 30, 2015) (holding *Rooker-Feldman* did not bar medical

malpractice claims where the plaintiff was not challenging the state court's initial ruling

committing him to the Lincoln Regional Center after a jury found him not responsible by

reason of insanity, but instead challenged the treatment he obtained while committed).

Similarly, *Heck* bars only claims that necessarily imply the invalidity of the plaintiff's

commitment or conviction.  *See McHorse v. Minnesota*, No. 13-cv-837 (MJD/LIB),

2013 WL 2383603, at *2 (D. Minn. May 30, 2013).

Here, while it may be true that some of Plaintiff's claims against Fairview relate to

certain actions or decisions that led to her civil commitment and assert damages caused

by her civil commitment, and might therefore properly be dismissed under *Rooker-*

*Feldman* or *Heck*,  many of her claims appear to relate to her treatment during her commitment and therefore do not necessarily emanate from the state court's decision to commit her.  For example, Plaintiff claims that Fairview wrongfully drugged her and refused to remove Dr. Philander as her treating physician.  These claims would exist even without the state court's civil commitment order, and this Court therefore finds they are not barred by *Rooker-Feldman* or *Heck v. Humphrey*.

### c)  Collateral Estoppel

Fairview next argues that Plaintiff's claims should be dismissed with prejudice because they are barred by collateral estoppel.  But at this stage, Fairview has not met its burden to establish this as a defense.  "The party asserting collateral estoppel has the burden to establish that 'the issue was actually presented and necessarily determined in the earlier action.'"  *Mach v. Wells Concrete Products Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (quoting *Lange v. City of Byron*, 255 N.W.2d 226, 228 (Minn. 1977)).  The Court is limited by the record before it and notes that it does not have much of Plaintiff's briefing from the civil commitment proceedings.  Fairview simply has not mapped out how each of Plaintiff's claims against it was actually presented and necessary to the state court's decision to civilly commit her.  The Court therefore cannot recommend dismissal of Plaintiff's medical malpractice claim against Fairview on these grounds.

### d)  Failure to Provide Affidavit Required for Medical Malpractice Claim

Fairview argues this Court should dismiss the medical malpractice claim against it with prejudice because Plaintiff has not complied with Minnesota Statute § 145.682.

17

Under the statute, a plaintiff must provide along with the summons and complaint an affidavit of expert review stating that

> the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff.

Minn. Stat. § 145.682, subd. 3(a).  After submission of the affidavit of expert review (the first affidavit), a plaintiff must provide a second affidavit that identifies each individual the plaintiff expects to call as an expert witness and provides the substance of the facts and opinions to which the expert will testify, as well as a summary of the grounds for each opinion.  Minn. Stat. § 145.682, subd. 4.  A plaintiff must submit the second affidavit within 180 days after commencement of discovery.  Minn. Stat. § 145.682, subd. 2.

Plaintiff did not provide any affidavit of expert review with the summons and complaint, so on October 28, 2015, Fairview sent Plaintiff a demand for the affidavit. (Waterworth Aff. Ex. E [Doc. No. 97].)  Fairview advised Plaintiff that Minnesota Statute § 145.682 requires that she provide such an affidavit within sixty days, or her medical malpractice case would be dismissed with prejudice.

On December 7, 2015, Plaintiff filed an affidavit, which stated:

> As the court has denied my request for waiver/modification and it is unclear to me what deadline applies while my objections to the denial court order are pending and one of the possible deadlines is near, I provide this affidavit in response to defendant Fairview Health Services' demand for an affidavit and anticipated similar demands from joined physician defendants.

> "[T]he facts of the case have been reviewed by [me] with experts whose qualifications provide a reasonable expectation that the expert[s'] opinions could be admissible at trial and that, in the opinion of th[ese] experts, the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff."

> I have for more than two years spoken to/corresponded with experts who are licensed in physician professional responsibility.  The feedback I get from them when I explain my claims is that they find my claims worthy but won't provide affidavits to unlawyered me: "If you get a lawyer, please feel free to have him or her contact me."

(Affidavit MS 145.682 [Doc. No. 161].)

Preliminarily, Plaintiff argues Minnesota Statute § 145.682 is unconstitutional, but she has not properly challenged the constitutionality of the statute.  Federal Rule of Civil Procedure 5.1(a)(1)(B) requires "a party that is challenging the constitutionality of a state statute must first file a notice of constitutional question stating the question and identifying the paper that raises it where the state or one of its agencies is not a party to the case, upon the state attorney general."  *Ray v. Hauff*, No. 08-cv-922 (MJD/JJK), 2010 WL 1390866, at *6 (D. Minn. Mar. 31, 2010).  Plaintiff filed a "Notice of Constitutional Question" on October 27, 2015 [Doc. No. 68].  Plaintiff filed a certificate of service stating she faxed that notice to "651-282-5832" on October 27, 2015 [Doc. No. 69].  Under Rule 5.1(a)(2), however, Plaintiff was required to serve this notice on the Attorney General by certified or registered mail or to an electronic address designated by the Attorney General for this purpose.  Plaintiff did not do so.  The Attorney General has not made any appearance in this matter.

Moreover, the only potential legal argument Plaintiff provides against the constitutionality of Minnesota Statute § 145.682 is that statutes should not impose

impossibilities on litigants.  But Plaintiff must provide a notice with allegations supported by legal analysis and citation.  *See Lanner v. Fairview-Univ. Med. Ctr.*, No. C9-00-1135, 2000 WL 1808974, at *4 (Minn. Ct. App. Dec. 12, 2000); *Ganguli v. University of Minnesota,* 512 N.W.2d 918, 919 n.1 (Minn. App. 1994).  The Court declines to consider her notice of constitutional question because she has not properly served it on the Minnesota Attorney General and it is lacking in any legal argument.

Even if Plaintiff had challenged the constitutionality of Minnesota Statute § 145.682 through the proper procedures, numerous Minnesota courts have found this statute constitutional.  *See Medina v. EMSA Corr. Care, Inc.*, No. 01-cv-838 (RHK/AJB), 2002 WL 1488773, at *7  (D. Minn. July 10, 2002); *Chizmadia v. Smiley's Point Clinic*, 768 F. Supp. 266, 271 n.4  (D. Minn. 1991), *aff'd*, 965 F.2d 647 (8th Cir. 1992); *Anderson v. Rengachary*, 608 N.W.2d 843 (Minn. 2000); *Gall v. Mayo Clinic*, 2001 WL 267490, at *4 (Minn. App. 2001); *Henke v. Dunham*, 450 N.W.2d 595, 598 (Minn. App. 1990).  This Court is aware of no reason to believe it would conclude otherwise.

Plaintiff next argues that she is not required to submit an expert affidavit because she is able to make a prima facie case without such expert.  In Minnesota,

> To establish a prima facie case of medical malpractice, a plaintiff must introduce expert testimony demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a direct cause of the plaintiff's injuries.

*Fabio v. Bellomo*, 504 N.W.2d 758, 762 (Minn. 1993).  In medical malpractice cases a plaintiff has a significant burden of proof and generally must provide expert testimony on the three elements of medical malpractice set forth above in order to make out a prima

facie case. *Anderson v. Rengachary*, 608 N.W.2d 843, 846 n.3 (Minn. 2000). Expert

testimony is necessary in "all but the most obvious medical malpractice claims." *Haile v.*

*Sutherland*, 598 N.W.2d 424, 428 (Minn. Ct. App. 1999) (noting that expert testimony

was not required when a physician failed to remove a sponge from a patient's body

during surgery). Such cases involve "acts or omissions complained of [which] are within

the general knowledge and experience of lay persons." *Tousignant v. St. Louis Cty.*,

615 N.W.2d 53, 58 (Minn. 2000) (citation omitted). Such cases are the exception,

however, and even claims of battery, false imprisonment, and intentional infliction of

emotional distress may require expert evidence to determine whether the plaintiff's

treatment deviated from the standard of care and whether the plaintiff was injured as a

result. *See Phillips v. Fairview Health Servs.*, No. 10-cv-4442 (MJD/SER), 2011 WL

6151514, at *3-4 (D. Minn. Dec. 12, 2011) (citing *C.C. v. Fairview Health Servs.*,

No. A09-2320, 2010 WL 3000603 (Minn. Ct. App. Aug. 3, 2010)).

Plaintiff argues she does not need an expert to prove Fairview and its physicians

failed to complete statutorily required reports that police officers had brutalized her, that

Fairview traumatized her by imprisoning her, that it failed to discipline its physicians and

staff for their misconduct, or that it was wrong in relying on hearsay statements from

police, paramedics, the county, and others. Plaintiff finally states she does not need an

expert "for all of the assertions in the complaint. The proximate cause consequences of

Fairview's unethical acts are a no-brainer for any ordinary person to determine without

expert opinion help." (Pl.'s Mem. Opp'n Fairview's Mot. Dismiss at 7-8.)

Here, Plaintiff's principal complaint is that Fairview misdiagnosed her, improperly institutionalized her, and mistreated her during her civil commitment.  Numerous other courts have found that medical malpractice claims involving psychiatric conditions require expert testimony.  *See Phillips*, 2011 WL 6151514, at *3-4 (finding expert testimony was necessary as to the standard of care where a plaintiff reported mental illness and suicidal thoughts, argued staff intended to harm him, and argued that the defendant was incorrect to put him on a patient watch); *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 405 (Minn. 1998) (finding a psychologist and psychotherapist could not serve as expert witnesses to establish the standard of care for a psychiatric nurse); *Kanter v. Metro. Med. Ctr.*, 384 N.W.2d 914, 916 (Minn. Ct. App. 1986) (finding expert testimony helpful in understanding the nature of mental illness, whether suicidal tendencies were associated with that illness, and whether the patient had given notice that she would act on those tendencies).  Therefore, the Court concludes Plaintiff was required to provide an expert affidavit with regard to her medical malpractice claims against Fairview.

Notwithstanding her insistence that it should not have been necessary, Plaintiff did file an affidavit within the sixty-day deadline to respond to Fairview's demand.  Fairview argues, however, that this affidavit substantively failed to comply with Minnesota Statute § 145.682, subd. 3.  Plaintiff's affidavit is perfunctory at best, but the Minnesota Supreme Court has held that the "first affidavit need not identify the expert or provide the details of the expert's opinion."  *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn. 1990).  And at least one Minnesota court has held a similarly vague affidavit

satisfied the statutory requirements for the first affidavit. *See Murillo v. Heegaard*,

No. A13-1209, 2014 WL 274102, at *3 (Minn. Ct. App. Jan. 27, 2014), *rev. denied*

(Apr. 15, 2014).  In that case, where Fairview was a defendant and at least one counsel

was the same as in this matter, the first affidavit stated that the plaintiff's attorney

> thoroughly reviewed the facts of this case with an expert whose
> qualifications provide a reasonable expectation, that the expert's opinions
> could be admissible at trial and that, in the opinion of this expert, each of
> the above-named Defendants deviated from the applicable standard of care
> and by that action caused injury to Plaintiff.

*Id.* The plaintiff submitted that affidavit with her summons and complaint. *Id.* The

Minnesota Court of Appeals held that affidavit "complied with the requirements of

subdivision three." *Id.* at *4.

Here, Plaintiff's affidavit states that she has reviewed the facts of her case with

experts whose qualifications provide a reasonable expectation that their opinions could be

admissible at trial, and in the opinion of these experts, the defendant deviated from the

applicable standard of care, causing injury to her.  While Fairview correctly points out

that it is apparent from the affidavit that none of those experts has agreed to testify for

Plaintiff, the Court finds nothing in the language of the statute that requires Plaintiff to

attest to having retained experts or even secured their promise to be retained.  Plaintiff's

affidavit provides each element required by the statute, and the Court therefore cannot

recommend dismissal for failure to comply with the first affidavit requirement at this

stage.

**e)**      **Immunity**

Fairview additionally argues that it is entitled to immunity from all of Plaintiff's claims under the Minnesota Commitment and Treatment Act.  Under that Act,

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4.  Thus, immunity is not available under this statute for someone who acts in bad faith.  Minnesota courts define bad faith as "the commission of a malicious, willful wrong," or the "intentional doing of a wrongful act without legal justification or excuse."  *Mjolsness v. Riley*, 524 N.W.2d 528, 530 (Minn. Ct. App. 1994) (citing *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991)).  Fairview contends Plaintiff has not alleged any actions that would constitute bad faith on Fairview's part.  But Plaintiff asserts Dr. Van Pelt saw her physical and psychological trauma from the alleged police brutality, yet offered her no relief from physical pain and no sympathy or empathy. (Am. Compl. at pp. 47-48 ¶ 14.)  She alleges doctors at Fairview drew her blood and drugged her against her will.  (*Id.* at p. 49 ¶ 22-23.)  She further claims that Fairview knowingly let her suffer (*id.* at p. 51 ¶ 38), and tortured her (*id.* at p. 53 ¶ 48).  On these allegations, and taking (as it must on a motion to dismiss) all of Plaintiff's allegations as true, the Court concludes Plaintiff has pleaded that Fairview acted in bad faith, and the Court therefore cannot find at the pleading stage that Fairview is immune to suit under the Minnesota Commitment and Treatment Act.

### f)      Alleged Violations of Minnesota Criminal Statutes

Under Minnesota law, civil liability from violation of a criminal statute arises only where "the statute expressly or by clear implication so provides." *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990). Plaintiff seeks damages against Fairview for alleged violations of Minnesota Statute § 609.505, subd. 1, which criminalizes a police officer's actions in making a false report. She also seeks damages under Minnesota Statute § 253B.23, subd. 3, in which a person making false reports resulting in the civil commitment of another may be guilty of a gross misdemeanor. The former statute does not appear even to apply to Fairview, and neither statute, expressly or by clear implication, provides for civil liability. Accordingly, if the District Court chooses to address the merits of these claims against Fairview, the Court would recommend dismissal of these claims with prejudice.

### g)      Defamation

Plaintiff states Fairview is liable for defamation. For a statement to be defamatory, a plaintiff must establish that: (1) the defamatory statement was communicated to someone other than the plaintiff; (2) the statement is false; (3) the statement tends to harm the plaintiff's reputation and lower her in the estimation of the community, and (4) the recipient of the false statement reasonably understands it to refer to a specific individual. *McKee v. Laurion*, 825 N.W.2d 725, 729-30 (Minn. 2013). Additionally, a "plaintiff must plead and prove a defamation claim with a certain degree of specificity, including pleading who made the alleged defamatory statement, to whom the statements were made, and where the statements were made." *Magee v. Trustees of*

*the Hamline Univ.*, 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013), *aff'd*, 747 F.3d 532 (8th Cir. 2014).  In particular, in Minnesota, a plaintiff must set forth the precise words verbatim.  *Id.* (citing *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000)).

Here, Plaintiff has not pleaded any specific statements that are allegedly defamatory, nor identified the individuals to whom they were made, where and when they were made, or how her reputation was harmed thereby.  Indeed, Plaintiff only mentions defamation once in her Fairview claims, in what appears to be a catchall paragraph listing the types of losses she claims to have experienced as a result of Fairview's "intentional and negligent misdiagnos[is] and 'institutionaliz[ation]" of Plaintiff.  (Am. Compl. at p. 54 ¶ 53.)  Thus, if the District Court chooses to address the state law defamation claim on the merits rather than finding a lack of subject matter jurisdiction, the Court recommends dismissal of this claim without prejudice for failure to state a claim upon which relief can be granted.

## C.    Dalager's Motion to Dismiss

Dalager filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, Dalager argues Plaintiff has failed to comply with the expert affidavit requirements of Minnesota Statute § 544.42 and he is entitled to statutory or quasi-judicial immunity from civil liability arising out of his court-appointed representation of Plaintiff in her civil commitment proceedings.

## 1.    Lack of Subject Matter Jurisdiction

Plaintiff has alleged no apparent federal law claims against Dalager.  Therefore, for the same reasons stated above with regard to the state law claims against Fairview, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the state law legal malpractice claims against Dalager, and dismiss them for lack of subject matter jurisdiction.  In the event, however, that the District Court wishes to consider Dalager's additional arguments for dismissal, however, the Court turns to those next.

## 2.    Compliance with Affidavit of Expert Review Requirement

Dalager argues Plaintiff has not complied with Minnesota Statute § 544.42, which governs legal malpractice cases and, as in its medical malpractice analog, requires that a plaintiff serve two expert witness affidavits on the defendant.  First, the plaintiff must serve an affidavit of expert review, establishing that an expert, whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial, reviewed the case and reached the opinion that the defendant deviated from the applicable standard of care and caused injury.  Minn. Stat. § 544.42, subd. 3.  The affidavit of expert review typically must be served with the pleadings.  *Id.*  If a plaintiff fails to comply with the requirement of this affidavit, a defendant may demand the affidavit.  If a plaintiff does not comply with the demand for the affidavit within sixty days, a court must dismiss the action with prejudice.  Minn. Stat. § 544.42, subd. 6.  Next, a plaintiff must serve an expert identification affidavit, identifying the expert witnesses

and providing the substance of and the basis for their opinions.  Minn. Stat. § 544.42,

subd. 4.

Plaintiff did not serve an affidavit of expert review with her pleadings.  Dalager

mailed Plaintiff a demand for an affidavit in accordance with Minnesota Statute § 544.42

on October 9, 2015 (Hinrichs Aff. Ex. D [Doc. No. 105].)  Plaintiff filed her affidavit on

December 7, 2015, which stated

> As the court has denied my request for waiver/modification and it is unclear
> to me what deadline applies while my objections to the denial court order
> are pending and one of the possible deadlines is near, I provide this
> affidavit in response to defendant Dalager's demand for an affidavit.
>
> "[T]he facts of the case have been reviewed by [me] with [dozens of]
> expert[s] whose qualifications provide a reasonable expectation that the
> expert[s'] opinions could be admissible at trial and that, in the opinion of
> th[ese] expert[s], the defendant deviated from the applicable standard of
> care and by that action caused injury to the plaintiff."
>
> In other words, I have spoken to/corresponded with dozens of attorneys
> who are licensed experts in lawyer professional responsibility.  The
> feedback I get from them when I explain my claims is that this all should
> have been dealt with by Dalager in the state court proceedings and that
> therefore he was remiss in his advocacy duty to me his client.

(Affidavit MS 544.42 [Doc. No. 160].)

Plaintiff argues Minnesota Statute § 544.42 is unconstitutional (Notice of

Constitutional Question [Doc. No. 68]), but for the same reasons set forth in Section

II.B.2.d, she has not properly challenged the constitutionality of the statute. Accordingly,

the Court declines to consider Plaintiff's attempted constitutional challenge.

Plaintiff next argues that she is not required to submit an expert affidavit because she is able to make a prima facie case without such expert.  To prove a legal malpractice suit in Minnesota,

> [A] plaintiff must establish four elements: (1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action.

*Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983).  Expert testimony is generally required to establish the applicable standard of care and that the standard of care was breached, "unless the conduct can be evaluated by a jury in the absence of expert testimony."  *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 116 (Minn. 1992); *see also Hill v. Okay Const. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977) ("Expert testimony should be generally required to establish the standard of care applicable to an attorney whose conduct is alleged to have been negligent and further to establish that his conduct deviated from that standard.").  Only in rare and exceptional cases is expert testimony not required.  *Fontaine v. Steen*, 759 N.W.2d 672, 677 (Minn. Ct. App. 2009) (citing *Sorenson*, 457 N.W.2d at 191).  Courts have held that "whether expert testimony is required depends on the nature of the question to be decided by the trier of fact and on whether technical or specialized knowledge will assist the trier of fact."  *Id.* (citation omitted).

Plaintiff states that she does not need an expert to prove Dalager committed legal malpractice by never speaking to her,[7] never speaking to any eyewitnesses, never investigating while knowing that the county did no investigation, failing to safeguard the three police audio recordings, failing to present any witnesses in court, and "on and on for all of the assertions in the complaint."  (Pl.'s Mem. Opp'n Dalager's Mot. Dismiss at 3-4 [Doc. No. 209].)

The Court concludes that this is a legal malpractice case requiring expert testimony.  Plaintiff has not alleged Dalager failed to represent her by missing court deadlines or failing to appear at hearings, for example.  Her complaints of Dalager are likely ones relating to his legal strategy.  *See Noske v. Friedberg*, 713 N.W.2d 866, 874 (Minn. App. 2006) ("[A] client cannot prevail on a legal-malpractice claim based on a lawyer's failure to pursue a particular strategy.").  Moreover, Plaintiff needs expert testimony to assist the finder of fact in understanding the standard of care for legal representation in civil commitment cases.  Additionally, Plaintiff needs expert testimony to prove Dalager's decisions were the but-for cause of her involuntary commitment.  For example, Plaintiff may not merely assert that Dalager's failure to call certain witnesses resulted in her civil commitment.  *See Prawer v. Essling*, 282 N.W.2d 493, 494 (Minn. 1979) ("The fact that defendant did not call or cross-examine certain witnesses is not, without more, sufficient to establish a case of legal malpractice.  It is a well-established

---

[7]  While Plaintiff now alleges that Dalager never spoke to her, in her Amended Complaint, she acknowledges that she sent correspondence to Dalager and that they communicated by phone.  (Am. Compl. at p. 65 ¶ 4.)

principle of trial advocacy that cross-examination of each and every opposition witness is not always advisable.").

Notwithstanding her insistence that no affidavit was required, however, Plaintiff filed her first affidavit on December 7, 2015. For the same reasons the Court found her affidavit of medical malpractice sufficient at this stage of the proceedings, it finds her affidavit of legal malpractice sufficient as well. Her affidavit states that she has reviewed the facts of her case with experts whose qualifications provide a reasonable expectation that their opinions could be admissible at trial, and that in their opinions, Dalager deviated from the applicable standard of care and caused injury to her. Her affidavit states the elements required by the statute. The Court therefore cannot recommend dismissal of Plaintiff's legal malpractice claim against Dalager at this stage for failure to comply with the first affidavit of expert review.

### 3.    Immunity

Like Fairview, Dalager also argues he is entitled to immunity under the Minnesota Commitment and Treatment Act. The portion of the Act relating to immunity is set forth above in Section II.B.2.e. In *Prawer*, the Minnesota Supreme Court expressed doubt that this Act grants court-appointed attorneys immunity against claims of malpractice in civil commitment matters. 282 N.W.2d at 493. Dalager points out, however, that while no Minnesota court has directly addressed whether the protections of the immunity provision extend to court-appointed counsel, in the nearly forty years since *Prawer*, the courts have emphasized the broad reach of this provision. *See, e.g.*, *Mjolsness*, 524 N.W.2d at 531 (applying the statute to bar a claim for legal malpractice against an attorney who reported

concerns about plaintiff's mental health to "911") ("The statute's grant of immunity is

designed to protect all persons who participate in the commitment process in good

faith."); *Enberg v. Bonde*, 331 N.W.2d 731, 735 (Minn. 1983); *Rueter v. City of New*

*Hope*, 449 N.W.2d 745, 750 (Minn. App. 1990), *pet. for rev. denied* (Minn. Feb. 28,

1990).

The Court agrees that nothing in the language of this provision would appear to

preclude its application to Dalager.  Nevertheless, in view of the uncertain state of

Minnesota law on this issue, the exception under the statute for claims of bad faith, and

the fact that this matter is only at the pleadings stage, the Court does not find here a clear

path to dismissal with prejudice even if the District Court were to address the claim on

the merits rather than decline to exercise subject matter jurisdiction.

The Court finds a clearer path, however, in Dalager's second immunity argument,

i.e., that he is entitled to quasi-judicial immunity because of his role as a court-appointed

attorney in this civil commitment matter.  Quasi-judicial immunity extends to those who

are "integral parts of [the judicial] process." *VanGelder v. Johnson*, 827 N.W.2d 430,

434 (Minn. Ct. App. 2012) (quoting *Sloper v. Dodge*, 426 N.W.2d 478, 479 (Minn. Ct.

App. 1988)).  Minnesota courts have extended quasi-judicial immunity to, among others,

"public defenders, court-appointed guardians ad litem, therapists, and arbitrators."

*VanGelder*, 827 N.W.2d at 434.  In *Dziubak v. Mott*, 503 N.W.2d 771 (Minn. 1993), the

Minnesota Supreme Court held that court-appointed counsel in criminal matters were

absolutely immune from suits for negligence in the performance of their duties, and that

therefore the district court should have granted a motion to dismiss a legal malpractice

suit filed by a criminal defendant against his court-appointed public defender.  Nothing in the reasoning of that case suggests the answer would be different for court-appointed counsel in the civil commitment setting.  Here, there are no facts pleaded, or even suggested in Plaintiff's memoranda, from which a plausible claim of intentional misconduct could be constructed.  Accordingly, if the District Court decides to reach the merits of the claim against Dalager rather than dismissing the claim without prejudice for lack of subject matter jurisdiction, the Court recommends it be dismissed with prejudice on grounds of quasi-judicial immunity.

### D.    Claims against Runningen

Runningen has not yet filed any motion to dismiss, but the Court recommends dismissal of all claims against her for lack of subject matter jurisdiction.  A federal court can examine whether it lacks subject matter jurisdiction on its own initiative at any stage in the litigation.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

As explained in the background above, Plaintiff's claims against Runningen arise from noise and other disturbance disputes that allegedly occurred when Runningen was living in the apartment above Plaintiff.  Plaintiff appears to bring claims against Runningen for causing uninhabitable living conditions, illegally operating a business from her apartment, and lying to police.  The Court can discern no federal claims against Runningen, and Plaintiff has not pleaded any facts from which the Court could infer Runningen is a state actor subject to liability under § 1983.  Therefore, for the same reasons stated above with regard to the state law claims against Fairview, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the

state law claims against Runningen, and dismiss them for lack of subject matter jurisdiction.

## III.    Recommendation

Based on the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant Fairview Health Services' Motion to Dismiss [Doc. No. 192] be **GRANTED**, in that:

    a. Plaintiff's HIPAA claim be **DISMISSED WITH PREJUDICE**;

    b. Plaintiff's state law claims for medical malpractice and defamation and for violations of Minnesota Statute § 609.505, subd. 1, and Minnesota Statute § 253B.23, subd. 3, be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction**.**

2. Defendant Joe Dalager's Motion to Dismiss [Doc. No. 193] be **GRANTED**, in that Plaintiff's state law claim for legal malpractice be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

3. Claims against Defendant Ria Runningen be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Dated: June 30, 2016                              _s/ Hildy Bowbeer_____
                                                                HILDY BOWBEER
                                                                United States Magistrate Judge

34

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.