# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| HARRIET M. LIEDTKE, | Civil No.  15-3361 (JRT/HB) |
| Plaintiff, |  |
| v. | **MEMORANDUMOPINION AND ORDER ADOPTING REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE** |
| RIA RUNNINGEN, TIMBERLAND PARTNERS, CITY OF BURNSVILLE, MATTHEW SMITH, FAIRVIEW HEALTH SERVICES, DAKOTA COUNTY, ANGELA ELWELL, and JOE DALAGER, |  |
| Defendants. |  |

Harriet Liedtke, 15151 Green Haven Drive, Apartment 124, Burnsville, MN  55306, *pro se*.

Brooke C. Nelson and Malcolm P. Terry, **BERNICK LIFSON, P.A.**, 5500 Wayzata Boulevard, Suite 1200, Minneapolis, MN  55416, for defendant Timberland Partners.

Ryan M. Zipf, **LEAGUE OF MINNESOTA CITIES**, 145 University Avenue West, St. Paul, MN  55103, for defendants City of Burnsville and Matthew Smith.

Helen R. Brosnahan and Jeffrey A. Timmerman, Assistant County Attorneys, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN  55033, for defendants Dakota County and Angela Elwell.

Barry G. Vermeer and Jennifer M. Waterworth, **GISLASON & HUNTER LLP**, 701 Xenia Avenue South, Suite 500, Minneapolis, MN  55416, for defendant Fairview Health Services.

Christine E. Hinrichs and Kelly A. Putney, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN  55402, for defendant Joe Dalager.

Plaintiff Harriet Liedtke brings this action *pro se*, alleging violations of her state and federal rights. Liedtke brings claims arising out of disputes with her landlord and neighbor, interactions with the Burnsville Police Department, and several civil commitments in Dakota County. All defendants, except for one, have moved to dismiss all of Liedtke's claims against them. Defendants Matthew Smith and the City of Burnsville have also moved to strike certain allegations in Liedtke's complaint. The Magistrate Judge issued two Report and Recommendations ("R&Rs") recommending that the Court grant the motions to dismiss and the motion to strike. Liedtke objects to both R&Rs. Because Liedtke's federal claims and some state law claims fail as a matter of law, and because the Court will decline to exercise supplemental jurisdiction over any remaining state law claims, the Court will adopt both R&Rs and dismiss Liedtke's claims against all defendants.

## BACKGROUND[1]

Harriet Liedtke's claims stem from a dispute with her upstairs neighbor, defendant Ria Runningen, whom Liedtke alleges ran an unlawful manufacturing business out of her apartment. (First Am. Compl. ("Am. Compl.") at 3-8, Sept. 18, 2015, Docket No. 14.)[2]

---

[1] A full description of the background of this case can be found in the Magistrate Judge's two R&Rs, and thus, the Court describes the facts only to the extent necessary to provide context for Liedtke's objections. (*See* R&R ("June 20 R&R"), June 20, 2016, Docket No. 216; R&R ("June 30 R&R"), June 30, 2016, Docket No. 217.)

[2] The Court will cite to the page numbers, rather than paragraph numbers, of Liedtke's complaint because she restarted the paragraph numbering for each defendant.

On August 29, 2013, Liedtke sat outside of Runningen's apartment on a folding chair, "hammering rhythmically" on Runningen's door.  (*Id.* at 4, 10.)  Runningen called 911 and reported that she was afraid of Liedtke, and that when she opened her door, Liedtke aimed the hammer at her and hit her door.  (*Id.* at 5.)  Runningen also reported that Liedtke had "mental problems."  (*Id.*)

Defendant Matthew Smith and another officer with the Burnsville Police Department responded to Runningen's 911 call.  (*Id.* at 33, 36.)  Liedtke alleges that the officers approached her with a "hostile attitude" at her apartment.  (*Id.* at 36-38.)  Based on this encounter, Liedtke makes several allegations against Smith and the City of Burnsville, including wrongful seizure; excessive force; acting on false information; filing false reports; failure to investigate Runningen; engaging in indecent conduct in police vehicles in order to harass and retaliate against her; lawlessness through policy, custom, and practice; spoliation; defamation; and violations of the Minnesota Government Data Practices Act ("MGDPA").  (*Id.* at 19-22, 24-29, 31-32, 33-35.)  The officers took Liedtke into custody and to defendant Fairview Health Services ("Fairview") for an emergency medical hold.  (*Id.* at 25, 42.)

Liedtke alleges several claims against Fairview and their doctors based on her emergency medical hold and subsequent civil commitments.  (*See* Suppl. Aff. of Jeffrey A. Timmerman ("Timmerman Suppl. Aff.") ¶ 3, Exs. 3, 5, Nov. 24, 2015, Docket No. 129.)  Largely, Liedtke appears to bring claims of medical malpractice, alleging that doctors at Fairview did not listen to or believe her version of the altercation with Runningen and the police, failed to document her physical trauma, improperly relied on

false police reports, tortured her through institutionalization, and misdiagnosed her.  (*Id.* at 45-49, 53-54.)

Liedtke also alleges that defendant Angela Elwell, a Dakota County social services worker, falsified records and falsely testified during her civil commitment hearings.  (*Id.* at 56-57, 60-65.)   Plaintiff accuses Dakota County of failing to supervise and train Elwell.  (*Id.* at 56-57.)  Liedtke also brings a common-law legal malpractice claim against defendant Joe Dalager, the attorney assigned to represent her in the Dakota County civil commitment proceedings, arguing, among other things, that he failed to fully investigate. (*Id.* at 65-67.)

Liedtke filed her initial complaint on August 25, 2015, and her operative amended complaint on September 18, 2015.  (*See* Compl., Aug. 25, 2015, Docket No. 1; Am. Compl.)   All defendants except for Runningen have moved to dismiss Liedtke's complaint,[3] and Defendants Smith and City of Burnsville have moved to strike some of Liedtke's allegations.[4]

On June 20, 2016, United States Magistrate Judge Hildy Bowbeer issued an R&R, recommending that the Court grant the motions to dismiss filed by Dakota County, Elwell, Smith, City of Burnsville, and Liedtke's landlord, Timberland Partners, as well as

---

[3] (*See* Defs. Dakota County and Angela Elwell's Motion to Dismiss, Oct. 23, 2015, Docket No. 52; Defs. City of Burnsville and Matthew Smith's Motion to Dismiss, Nov. 5, 2015, Docket No. 81; Def. Timberland Partners' Motion to Dismiss, Nov. 5, 2015, Docket No. 90; Def. Fairview Health Services Motion to Dismiss, Feb. 1, 2016, Docket No. 192; Def. Joe Dalager's Motion to Dismiss, Feb. 1, 2016, Docket No. 193.)

[4] (*See* Defs. City of Burnsville and Matthew Smith's Motion to Strike Pleading, Nov. 5, 2015, Docket No. 85.)

the motion to strike filed by Smith and the City of Burnsville.  (R&R ("June 20 R&R") at 59-61, June 20, 2016, Docket No. 216.)  The Magistrate Judge found that all of Liedtke's federal law claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.  (*Id.* at 9-20, 29-36, 45-46).  The Magistrate Judge recommended dismissing several of Liedtke's state law claims with prejudice where there was no cause of action or where the claims were barred, and recommended declining to exercise supplemental jurisdiction over any remaining state law claims because no federal claims remained.  (*Id.* at 56-59.)

On June 30, 2016, the Magistrate Judge issued a second R&R recommending the Court grant Fairview and Dalager's motions to dismiss.  (R&R ("June 30 R&R") at 34, June 30, 2016, Docket No. 217.)  The Magistrate Judge found that Liedtke's HIPAA claim, the only federal claim alleged against Fairview, should be dismissed because there is no private cause of action.  (*Id.* at 12-14.)  The Magistrate Judge also found Liedtke brought no federal claims against Dalager, and recommended that the Court decline to exercise supplemental jurisdiction over any remaining state law claims against either party  (*Id.* at 26-27.)

Liedtke objects to both R&Rs.  (Objs. to 6/20/2016 R&R ("Objs. to June 20 R&R"), July 19, 2016, Docket No. 224; Objs. to 6/30/2016 R&R ("Objs. to June 30 R&R"), July 19, 2016, Docket No. 225.)[5]

---

[5]  Liedtke filed two documents titled "Objections to the 6/20/2016 Report and Recommendation."  (*See* Objs. to 6/20/2016 R&R ("Objs. to June 20 R&R"), July 19, 2016, Docket No. 224; Objs. to 6/20/2016 R&R, July 6, 2016, Docket No. 219.)  The Court primarily

(Footnote continued on next page.)

**DISCUSSION**

## I.   STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). In deciding a motion under Rule 12(b)(1) the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction

_____

(Footnote continued.)

discusses the later-filed document, but has considered both and finds that they are substantially similar. Additionally, Liedtke filed an Addendum to the June 20 R&R, (Addendum One to 6/20/2016 R&R, July 19, 2016, Docket No. 222), which the Court has considered, but finds that it contains no additional relevant arguments, not already discussed in other objections.

are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed. *Id.* (internal quotation marks omitted).

The Magistrate Judge's thorough and lengthy R&Rs deal extensively with Liedtke's claims, and thus, the Court will not duplicate that work by addressing all issues again; instead, the Court will address Liedtke's claims and the issues only to the extent

necessary to deal with the present objections regarding the determinative reasoning in the Magistrate Judge's R&Rs.

## II.      DAKOTA COUNTY DEFENDANTS

Liedtke objects to the Magistrate Judge's conclusion that *Rooker-Feldman* barred some of her claims against the Dakota County Defendants, Elwell and Dakota County. Under the *Rooker-Feldman* doctrine, federal courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings.  *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005).  The doctrine is narrow and applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Riehm v. Engelking*, 538 F.3d 952, 964 (8th Cir. 2008) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).  The Magistrate Judge found that to the extent Liedtke seeks to set aside the state civil commitment order or brings claims inextricably intertwined with the civil commitment orders, they are barred by *Rooker-Feldman*.

Liedtke objects, arguing that the doctrine does not apply to her claims that Dakota County Defendants failed to investigate under Minnesota Statute §§ 253B.07 and 626.557 because the alleged failure occurred prior to her civil commitment and because her claims are subject to a fraud exception to *Rooker-Feldman*.  (Objs. to June 20 R&R at 8, 10-11.)  However, whether the Dakota County Defendants followed proper procedure leading up to Liedtke's civil commitment under state law is essentially a challenge to the

commitment itself, and the Eighth Circuit has not recognized a fraud exception to the *Rooker-Feldman* doctrine.  *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999).  Thus, Liedtke's objection fails because the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine for any of her claims that sought to set aside her state court civil commitment orders or proceedings.  (*See* June 20 R&R at 10-13.)

Liedtke also objects to the Magistrate Judge's conclusion that she did not allege an individual-capacity claim against Elwell.  (Objs. to June 20 R&R at 8.)  Liedtke points to her complaint's specificity with regards to the relief requested ("100% of . . . Elwell's income and assets in perpetuity"), the fact that she named Elwell in the caption, and the fact that she numbered a section for Elwell in the complaint as support for this objection. (*Id.* at 8.)  The Magistrate Judge considered this argument, however, and found it unavailing because Eighth Circuit precedent requires an unambiguous pleading, a clear statement, that the individual defendant is being sued in his or her individual capacity. (June 20 R&R at 17 (citing *Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007).)  The Eighth Circuit requires more than a "cryptic hint" in the complaint and has found no individual-capacity claim where the complaint referred to officials as "individual Defendants" and requested damages unavailable in an official capacity lawsuit.  *Baker*, 501 F.3d at 924.  Thus, Liedtke alleged claims against Elwell in her official capacity only, and the Court will reject her objection.

Moreover, as discussed by the Magistrate Judge, even if Liedtke had alleged claims against Elwell in her individual capacity, they would fail for failure to state a

claim.  Liedtke has not objected to the Magistrate Judge's alternative conclusion that her claims would fail, even if properly alleged as individual-capacity claims, due to Elwell's absolute and qualified immunity as a government official.  (June 20 R&R at 20-25.) Liedtke also does not object to the Magistrate Judge's conclusions that she has failed to adequately plead any § 1983 claims against Elwell in her official capacity or against Dakota County directly under *Monell* and *Harris*.  (*Id.* at 16-20.)  Thus, the Court will adopt the Magistrate Judge's finding that no viable federal claim remains against the Dakota County Defendants.

Liedtke objects to the Magistrate Judge's conclusion that the MGDPA requires her to exhaust all administrative remedies, citing Minnesota Statute § 13.08.  (Objs. to June 20 R&R at 9.)  While Liedtke is correct that Minnesota Statute § 13.08 provides an alternative avenue to challenge data practices, and does not require a plaintiff to also follow the administrative process in Minnesota Statute § 13.04, the Court will still dismiss this claim without prejudice, as recommended by the Magistrate Judge, because all federal claims have been dismissed and the Court declines to exercise supplemental jurisdiction over any remaining state law claims.  (June 20 R&R at 56-57.)

Liedtke does not object to the Magistrate Judge's recommendation regarding her defamation claim against Elwell, and the Court will adopt the analysis, denying the claim with prejudice to the extent that it is based on statements during the civil commitment proceedings and without prejudice to the extent it is based on statements outside of those proceedings.  (*Id.* at 26-29.)

## III.    BURNSVILLE DEFENDANTS

It is unclear if Liedtke objects to the Magistrate Judge's application of the *Rooker-Feldman* doctrine with regard to the Burnsville Defendants, Smith and the City of Burnsville.  The Magistrate Judge found that Liedtke's claims against the Burnsville Defendants were barred by *Rooker-Feldman* to the extent they were based on the reports made and relied upon in her commitment proceedings, (June 20 R&R at 30), but not to the extent that they were based on whether there was probable cause for her August 29, 2013, detention and whether her seizure involved excessive force.  (*Id.* at 30-32).  For the reasons discussed in the prior section, the Court finds that the Magistrate Judge properly applied *Rooker-Feldman*, and that the Court lacks subject matter jurisdiction over Liedtke's claims to the extent that she seeks to undo the civil commitment proceeding.  But, *Rooker-Feldman* does not bar Liedtke's actions based on probable cause and excessive force related to her initial seizure because they do not implicate the validity of her civil commitment.  (*Id.* at 31.)

Liedtke also objects to the Magistrate Judge's conclusion that she did not allege an individual-capacity claim against Smith.  (Objs. to June 20 R&R at 8.)  Liedtke points to her complaint's specificity with regards to the relief requested ("100% of . . . Smith's . . . income and assets in perpetuity"), the fact that she specifically named Smith in the caption, and the fact that she numbered a section for Smith in the complaint as support for this objection.  (*Id.* at 8.)  The Magistrate Judge considered this argument, and found it unavailing for the same reasons as those discussed with regard to Elwell.  (June 20 R&R at 33.)  Because Liedtke did not unambiguously plead an individual-capacity claim

against Smith under Eighth Circuit precedent, as discussed above, Liedtke alleged only an official-capacity claim against Smith.

Liedtke objects to the Magistrate Judge's alternative holding, which reasoned that to the extent Liedtke had alleged an individual-capacity claim against Smith, he was entitled to qualified immunity because there was at least arguable probable cause to seize Liedtke.  (*Id*. at 36-38.)  Liedtke argues that Smith did not have probable cause to arrest her.  (Objs. to June 20 R&R at 3, 6.)  She argues that Runningen in fact called the police after Liedtke had already returned to her own apartment and when someone else was at Runningen's door.  (*Id.* at 3-4.)  However, even if true, this fact would not necessarily change the analysis because arguable probable cause is determined based on the totality of the circumstances before the officer, *see Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013), and Liedtke admits that Runningen told police that "she was threatened by [Liedtke] with a hammer," and that "she was afraid of being murdered by plaintiff." (Am. Compl. at 5.)  Based on those allegations and others, (*see* June 20 R&R at 37-38), the Magistrate Judge properly found that even considering the facts as pleaded, arguable probable cause existed, satisfying the standard for qualified immunity.  (June 20 R&R at 36-38.)

Liedtke also appears to argue for the first time in her objections that she was denied her *Miranda* rights because the officers did not inform her of the reason for her detention or her constitutional rights.  (Objs. to June 20 R&R at 7.)  Even if a *Miranda* warning should have been given, Liedtke has not established a federal claim on that basis because "[t]he reading of *Miranda* warnings is a procedural safeguard" and "the remedy

for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." *Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (quoting *Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989)).

Liedtke also argues in her objections that the Burnsville police violated her constitutional right to require police surveillance at all times, claiming the burden should be on Burnsville to prove that no rights were constitutionally violated by this failure to conduct video surveillance. (Objs. to June 20 R&R at 3.) This allegation also does not assert a viable federal claim because, as the Magistrate Judge noted, there is no constitutional right to video monitoring, (June 20 R&R at 35-36), and no such burden-shifting occurs.

In her objections, Liedtke again makes illicit allegations against Smith regarding purported indecent acts. (Objs. to June 20 R&R at 7-8.) However, the Court can discern no cognizable cause of action based on those allegations. (*See* June 20 R&R at 38.) In addition, Liedtke objects to the Magistrate Judge's recommendation that the Court strike Liedtke's allegations regarding Smith's sexual orientation, public sexual activities, and performing law enforcement activities out of sexual gratification. (Objs. to June 20 R&R at 7-8.) However, she merely repeats her allegations, and does not point to any flaw in the Magistrate Judge's reasoning or conclusion. (*Id.*) While a motion to strike under Federal Rule of Civil Procedure 12(f) is an "extreme measure," *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000), it may be appropriate for "redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f). The Court will grant the motion to strike because the allegations regarding sexual orientation are

immaterial, and the allegations regarding other sexual activities and gratification are immaterial, impertinent, and scandalous.   (*See* June 20 R&R at 44-45.)  The Court will adopt the Magistrate Judge's recommendation that the Burnsville Defendants provide a proposed redacted amended complaint consistent with the R&R and this Order.

Liedtke objects to the Magistrate Judge's conclusion that the MGDPA requires her to exhaust all administrative remedies with regard to Liedtke's claim that the Burnsville Defendants failed to correct police report data.   (Objs. to June 20 R&R at 9.)   As discussed above, Liedtke could pursue relief under Minn. Stat. § 13.08 without exhausting her administrative remedies; however, the Court will still dismiss this claim without prejudice, as recommended by the Magistrate Judge, because all federal claims have been dismissed and the Court declines to exercise supplemental jurisdiction over any remaining state law claims.  (June 20 R&R at 56-57.)  Liedtke does not object to the rest of the Magistrate Judge's analysis regarding the MGDPA claims against the Burnsville Defendants, including that her MGDPA claim based on the release of police incident reports should be dismissed with prejudice because the reports were not private data under the statute, (*id.* at 42-43), and that any other MGDPA claim should be dismissed without prejudice for lack of jurisdiction, (*id.* at 43).

Liedtke also does not object to the findings of the Magistrate Judge that Liedtke failed to allege facts suggesting a policy or custom or failure to train for any federal claims against the City of Burnsville or against Smith in his official capacity, and they should be dismissed with prejudice, (*id.* at 34-36); that she failed to plead facts supporting a RICO claim and showed no likelihood of being able to establish such

liability, and therefore, the RICO claim should be dismissed with prejudice, (*id.* at 39); that her defamation claims against Burnsville Defendants are barred by absolute immunity, and should be dismissed with prejudice, (*id.* at 39-40);  that her claims based on several Minnesota criminal statutes should be dismissed with prejudice because there is no indication that they provide for civil liability, (*id.* at 41); and that her spoilage and spoliation claims should be dismissed with prejudice because they are not valid causes of action in this context, (*id.* at 41-42).  The Court finds no clear error in these conclusions, and will adopt the Magistrate Judge's analysis and recommendations on these issues.

## IV.    TIMBERLAND PARTNERS

Liedtke appears to object to the Magistrate Judge's analysis of the effect of her prior rent escrow actions on her claims against Timberland Partners.  (Objs. to June 20 R&R at 11-12.)  The Magistrate Judge found that the state court had previously addressed Liedtke's utilities apportionment dispute in two rent escrow actions, finding that Liedtke had consented to the apportioning of utility charges even after she was aware of Runningen's business.  (June 20 R&R at 49.)  Thus, the Magistrate Judge found that Liedtke's challenge to the utilities apportionment under Minn. Stat. § 504B.215 was already fully litigated in the state court.  (*Id.*)  The Magistrate Judge also found that Liedtke's claim that "indecency" in vehicles near the apartment rendered her apartment uninhabitable was previously addressed by the state court in the 2015 rent escrow action. (*Id.* at 50.)  Finally, the Magistrate Judge found that Liedtke's claims regarding the noise

and odors from Runningen's apartment were already addressed in the 2014 rent escrow action. (*Id.*)

Construing her objections liberally, Liedtke may argue that she was not offered a "full and fair opportunity to be heard on the adjudicated issue," which is required for both collateral estoppel and res judicata to apply, *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837, 840 (Minn. 2004), because the rent escrow actions "were severely 'constrained' by statute as to what could be litigated," and she could not bring a tort claim or obtain discovery, among other things.   (Objs. to June 20 R&R at 12.)   However, Liedtke provides no support for her argument.   Claims involving state housing law are properly considered by a state district court in a rent escrow action, and both rent escrow actions resulted in the state court issuing Findings of Fact and Conclusions of Law and Order. (Aff. of Brooke C. Nelson, Exs. 2, 4, Nov. 5, 2015, Docket No. 93.)   Thus, the Court will overrule Liedtke's objections to the Magistrate Judge's finding that her state claims based on utilities apportionment, "indecency" near the apartment, and noise and odor from Runningen's apartment were barred by res judicata and collateral estoppel.   (June 20 R&R at 49-50.)   Those claims will be dismissed with prejudice.

The Magistrate Judge also found that some of Liedtke's habitability claims were not previously raised or could not have been raised in the prior litigation, and thus, could not be dismissed under res judicata.   (*Id.* at 53.)   However, to the extent Liedtke raises these additional claims, the Court will decline to exercise supplemental jurisdiction over them because no federal issues remain in this case.

Liedtke objects to the Magistrate Judge's dismissal of any claims based on a principal-agent relationship with Timberland Partners.  (Objs. to June 20 R&R at 10.) Liedtke reiterates her allegations that Timberland Partners engaged her to "negotiate" with Runningen regarding Liedtke's noise complaints, that Timberland Partners gave Liedtke false information regarding Runningen's character, failed to inform police that Liedtke was permitted to negotiate her noise complaints and hammer on Runningen's door, and that Timberland Partners falsely called Liedtke "mentally ill."  (*Id.* at 10; Am. Compl. at 9-12.)  The Magistrate Judge found that Liedtke failed to allege sufficient facts to support a claim that a fiduciary relationship existed, failed to establish a duty from such a relationship, and failed to establish a breach of duty entitling her to relief.  (*See* June 20 R&R at 54-56.)  The Court need not address these arguments further, however, because Liedtke does not allege a federal law claim based on her relationship with Timberland Partners, and thus, the Court will dismiss Liedtke's claim without prejudice along with several other state law claims.

Liedtke does not object to the recommendations and findings of the Magistrate Judge's regarding claims against Timberland Partners that Liedtke's § 1983 claims be dismissed with prejudice because Timberland Partners is a private landlord, and Liedtke has not alleged state action or joint activity, (June 20 R&R at 45-46); that *Rooker-Feldman* bars Liedtke's claims based on Timberland Partners' alleged perjury during the rent escrow actions because the injury pleaded resulted from the court action, (*id.* at 47-48); Liedtke's RICO claim be dismissed with prejudice because there is no indication that she could plead facts supporting such a claim, (*id.* at 46); Liedtke's claims based on

several Minnesota criminal statutes be dismissed with prejudice because they do not provide for civil liability, (*id.* at 53-54); Liedtke's spoliation claim be dismissed with prejudice because there is no such cause of action, (*id.* at 54); and Liedtke's defamation claim be dismissed without prejudice because she has failed to plead the defamatory statements verbatim, (*id.* at 56).  The Court finds no clear error in these recommendations, and will adopt the Magistrate Judge's analysis and conclusions on these issues.

## V.  FAIRVIEW

Liberally construing Liedtke's objections, she objects to the Magistrate Judge's conclusion that she did not allege any federal claims against Fairview except for a HIPAA violation.  (Objs. to June 30 R&R at 7-8.)  Liedtke appears to argue that Fairview violated her due process rights by denying her sufficient access to the internet prior to her civil commitment hearing.  (*Id.*)  As noted by the Magistrate Judge, Liedtke has previously indicated that she does not allege federal claims against Fairview.  (*See* June 30 R&R at 12-13.)  However, even if Liedtke had pleaded an additional federal claim based on her inability to access the internet in preparation for her civil commitment hearing, her claim would fail.  Liedtke's objection states that this was an "[u]nconstitutional deprivation of due process," but she argues that she was entitled to access to the internet under the "Patent's Bill of Rights, statutes, and oversight authorities," not under the constitution or established due process rights.  (*Id.*) Additionally, the Court does not find any constitutional right to unlimited internet access

for independent legal research, particularly where Liedtke was already entitled to legal counsel.  *Cf. Bounds v. Smith*, 430 U.S. 817, 830-31 (1977) (noting multiple "constitutionally acceptable method[s] to assure meaningful access to the courts," including hiring attorneys); Minn. Stat. § 253B.07, subd. 2(c) (describing the right to counsel in judicial commitment procedures).  Thus, the Court finds Liedtke has not sufficiently alleged any additional federal claims against Fairview.

Liedtke does not object to the Magistrate Judge's conclusion that her HIPPA claim failed because no private cause of action existed, and the Court will adopt the Magistrate Judge's recommendation to dismiss that claim.  (June 30 R&R at 12-13.)  Because the Court adopts this finding, does not find any additional federal claims, and will decline to exercise subject matter jurisdiction over any remaining state law claims against Fairview, the Court need not consider the Magistrate Judge's alternative recommendations regarding the state law claims or Liedtke's objections to those claims.  (*See id.* at 16-26.)

## VI.  DALAGER

Similarly, Liedtke objects to the Magistrate Judge's finding that Liedtke did not allege any federal claims against Dalager, and that all state law claims should be dismissed for lack of subject matter jurisdiction.  (Objs. to June 30 R&R at 12.)  However, Liedtke does not describe any federal law claim in her objections, and after independent review of the amended complaint, the Court finds no federal claims alleged against Dalager; rather, Liedtke's alleges malpractice claims, which stem from what she

alleges was inadequate legal representation in her civil commitment hearing.[6]  (*See* Am. Compl. at 65-67.)  Because no federal claims remain, the Court will adopt the Magistrate Judge's recommendation to dismiss Liedtke's state law claims against Dalager for lack of subject matter jurisdiction.  (June 30 R&R at 27.)

Finally, because the Court will dismiss based on the Magistrate Judge's primary recommendation, it need not address Liedtke's objections to the Magistrate Judge's alternative reasoning that the Court could dismiss based on quasi-judicial immunity or the Magistrate Judge's discussion of the expert affidavit requirement.  (Objs. to June 30 R&R at 3-4, 7-8.)

## VII.  RUNNINGEN

Liedtke objects to the Magistrate Judge's recommendation that the Court also dismiss all claims against Runningen; Liedtke argues that the Court should enter default judgment against Runningen rather than dismiss because Runningen failed to answer Liedtke's complaint.  (*Id.* at 1-2.)  She has also filed a separate motion for judgment against Runningen.  (Mem. of Law, July 19, 2016, Docket No. 223.)  First, it appears that

---

[6] While not discussed by the Magistrate Judge, or clearly alleged by Liedtke, the Court notes that if Liedtke is attempting to bring a federal claim based on ineffective assistance of counsel, it fails.  To the extent she seeks to challenge her civil commitment based on ineffective assistance of counsel, such a claim is improper outside of the habeas context under *Rooker-Feldman*.  *See Prince v. Ark. Bd. of Examiners of Psychology*, 380 F.3d 337, 340 (8th Cir. 2004) (noting that under *Rooker-Feldman* federal district courts cannot review state court judgments except for in the context of habeas corpus petitions).  And to the extent she brings a § 1983 claim under the same theory, it would fail as premature under *Heck v. Humphrey*, which bars damages actions based on an unlawful state court conviction unless it has been reversed, expunged, or declared invalid.  *See Heck v. Humphrey*, 512 U.S. 477, 478-88 (1994); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005) (applying *Heck* to a civilly committed detainee under California's "Sexually Violent Predators Act"), *cert. denied*, 547 U.S. 1166 (2006).

Runningen was never properly served in this action; Runningen's summons was returned unexecuted because the server was unable to locate her at the last known address. (Summons, Nov. 23, 2015, Docket No. 127.)   Additionally, as discussed by the Magistrate Judge, the Court may dismiss for lack of subject matter jurisdiction at any stage and of its own initiative.   (June 30 R&R at 33 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)).)   Here, just as with Fairview and Dalager, the Court finds that Liedtke has not alleged any federal claims against Runningen after reviewing her amended complaint.   (Am. Compl. at 3-9.)   Thus, the Court will decline to exercise supplemental jurisdiction, and will dismiss Liedtke's claims against Runningen for lack of subject matter jurisdiction.   Accordingly, the Court will also deny Liedtke's motion for judgment as moot.

## VIII.   SUPPLEMENTAL JURISDICTION

Liedtke may object to the Magistrate Judge's recommendation that the state law claims discussed above be dismissed without prejudice because no federal claim remains. (Objs. to June 20 R&R at 9.)   Liedtke argues that many of her claims stem from "the same set of circumstances," and that litigating them all in federal court would be expedient.   (*Id.*)   Under 28 U.S.C. § 1367(a), the Court may exercise supplemental jurisdiction over claims that are part of the same case or controversy as claims that fall within the Court's original jurisdiction.   The Court may retain jurisdiction over related state law claims after dismissing all claims over which the Court had original jurisdiction under 28 U.S.C. § 1367(c)(3).   However, "[t]he district court is afforded broad discretion

in determining whether to exercise supplemental jurisdiction," *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011), and considers judicial efficiency, convenience, and fairness to litigators, *see Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006).   In assessing efficiency, convenience, and fairness, courts look to a number of factors, including "the stage of the litigation; difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum."   *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (internal quotation marks omitted).   Here, the case is in the early stages of litigation:   discovery has not occurred and several parties have not answered, instead filing motions to dismiss.   The remaining state law claims primarily involve the MGDPA and state housing law, and thus, are more properly heard before the state court.   The Court finds that the interests of efficiency, convenience, and fairness are best served by declining to exercise supplemental jurisdiction over the remaining state law claims, and thus, the Court adopts the Magistrate Judge's recommendation to do so, (*see* June 20 R&R at 56-59).

In sum, the Court fully adopts the Magistrate Judge's two thorough R&Rs addressing Liedtke's claims.   The Court has addressed all of Liedtke's specific objections that relate to the Magistrate Judge's operative reasoning.   To the extent Liedtke makes additional objections not addressed here, the Court finds them fully addressed in the Magistrate Judge's R&Rs or unrelated to the legal issues at hand.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Liedtke's objections [Docket Nos. 219, 222, 224, 225] and **ADOPTS** the June 20 and 30 Reports and Recommendations [Docket Nos. 216, 217]. Accordingly, **IT IS HEREBY ORDERED** that:

1.     Dakota County and Elwell's Motion to Dismiss [Docket No. 52] is **GRANTED:**

   a.     Liedtke's federal law claims are **DISMISSED with prejudice**;

   b.     Liedtke's state law claims for violations of Minnesota Statute §§ 609.505 subd. 1, and 253B.23, subd. 3, and defamation claims based on statements made during the civil commitment proceedings are **DISMISSED with prejudice**; and

   c.     Liedtke's state law MGDPA claims and her defamation claim to the extent it is based on statements made outside of civil commitment proceedings are **DISMISSED without prejudice.**

2.     Smith and City of Burnsville's Motion to Dismiss [Docket No. 81] is **GRANTED**:

   a.     Liedtke's federal law claims, except the claim against Smith for excessive force, are **DISMISSED with prejudice,** and the claim against Smith for excessive force is **DISMISSED without prejudice**;

b.      Liedtke's state law claims for violations of Minnesota Statute §§ 609.505, subd. 1, and 253B.23, subd. 3, spoliation, and defamation are **DISMISSED with prejudice**;

c.      Liedtke's state law MGDPA claim based on the release of police incident reports is **DISMISSED with prejudice**; and

d.      Liedtke's other state law MGDPA claims are **DISMISSED without prejudice**.

3.      Smith and City of Burnsville's Motion to Strike [Docket No. 85] is **GRANTED**.

a.      Burnsville Defendants are **DIRECTED** to submit a proposed redacted amended complaint to the Court within fourteen (14) days of the date of this Order.

b.      The Clerk of Court is **DIRECTED** to seal the Amended Complaint [Docket No. 14] until further order of the Court.

4.      Timberland Partners' Motion to Dismiss [Docket No. 90] is **GRANTED**:

a.      Liedtke's federal law claims are **DISMISSED with prejudice**;

b.      Liedtke's state law claims for habitability that were previously address in the 2014 and 2015 rent escrow actions, violations of Minnesota Statute §§ 609.505, subd. 1, and 253B.23, subd. 3, and spoliation are **DISMISSED with prejudice**; and

        c.      Liedtke's state law claims of defamation, habitability claims that were not addressed in the 2014 and 2015 rent escrow actions, and agency/principal claims are **DISMISSED without prejudice**.

5.      Fairview Health Services' Motion to Dismiss [Docket No. 192] is **GRANTED**:

        a.      Liedtke's HIPAA claim is **DISMISSED with prejudice**;

        b.      Liedtke's state law claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

6.      Dalager's Motion to Dismiss [Docket No. 193] is **GRANTED**.  Liedtke's claims are **DISMISSED without prejudice**.

7.      Liedtke's claims against Runningen are **DISMISSED without prejudice**.

8.      Liedtke's Motion for Judgment [Docket No. 223] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 29, 2016
at Minneapolis, Minnesota.

                                s/ John R. Tunheim
                                JOHN R. TUNHEIM
                                Chief Judge
                              United States District Court